Consolidated cases being 4141044 and 4150537. For the appellate, we have Ryan Wilson for the Appellee, Luke McNeil. Mr. Wilson. May it please the Court. Counsel. I represent Corey Lee on behalf of the Office of the State Appellate Defender. Nearly 50 years ago, in Illinois v. Allen, the U.S. Supreme Court said that the use of shackles is something of an affront to the very dignity and decorum of judicial proceedings that a judge is seeking to uphold. Forty years ago, the Illinois Supreme Court, in Boos v. Staley, echoed Allen's sentiment. Staley went a little further, saying that a defendant has a right to stand trial with the appearance, dignity, and self-respect of a free man. Yet today, even after 50 years of precedent, and probably more than that, we're here again today arguing another case where a defendant was shackled without there being any determination that the shackles were necessary. Corey has filed a petition for post-conviction relief and alleged, essentially, that there's a due process violation here. And as a result of that due process violation, he was prejudiced. Given the closeness of the trial evidence, the State's unable to establish that this due process error was harmless beyond a reasonable doubt. And as a result, Corey's entitled to a new trial. He essentially made two claims in the post-conviction petition that are relevant to the issue that we're discussing today. He first argued that the judge committed error by not holding a Boos hearing before essentially requiring him to be shackled at the ankles each day of trial. And during post-conviction proceedings, the court agreed that it was error. The court, however, apparently was under the mistaken impression that Corey couldn't show prejudice unless there was evidence that the jury somehow saw the shackles. Apparently, the table behind which Corey sat had a skirt that went down to the floor. And therefore, the judge didn't believe that the jury could have seen the shackles. But we know from cases such as Staley, from People v. Allen, and from the Buckner case, that before ordering a defendant restrained, the trial judge should state his reasons on the record, and the failure to properly analyze the Boos factors is a due process violation. Now, the reason that it matters that it's a due process violation in this case is, again, because of the closeness of the evidence. There were arguably more witnesses in this case who testified that Corey did not have a gun than witnesses who said that he did. I'll talk a little more about the absence of... Let me ask you, counsel, on that subject. Yes. When you have witnesses who testify conflicting, whose testimony is conflicting, does that necessarily mean the evidence was close? Is that the test? I think you have to look at the substance of the witness's testimony to determine that. We, in no way, have to establish that Corey was innocent of this offense. We just have to establish that the evidence was close. And while there is conflicting testimony regarding whether or not he had the gun, it is just that. It's conflicting testimony. It isn't... When I was preparing for this argument a few times, I was thinking in terms of the possibility that there may have been sufficient evidence for Corey's acquittal, but for the shackling issue, given the strength of the evidence here. How can that be if the jury never saw the shackles? Well, a few different reasons. Whereas the judge concluded that the jury never saw the shackles, we don't know that the jury was unaware that the shackles were there. I would guess if it's a normal pair of shackles, if Corey shuffles his feet and makes noise. If Corey moves a certain way, the jury may have been able to see the shackles. But more importantly in this case, one of the chief allegations in the post-conviction petition was that a juror walked into the courtroom. Right. I understand that. What about the fact that it was his defense that he was in continuous custody? Defense counsel did assert that it was trial strategy not to object to the shackles. To say that there's monumental flaws with that strategy, I think, is a vast understatement. What happened in this case, in the hours after Corey was arrested, someone allegedly went into the home that he shared with his girlfriend and put a hole in the wall. Now, we don't know who did that. We don't know why they did it. But the state seemed to infer that maybe somebody was looking for something. Maybe somebody went to the house to recover a handgun. So for that reason, defense counsel said during the post-conviction proceedings that he had a strategy. He wanted the jury to know that Corey had been in continuous custody. Now, the flaw in that strategy, obviously, is in order to prove that Corey was arrested three months prior to trial, defense counsel didn't need the jury to know that Corey was shackled during trial to establish that three months earlier he couldn't have. But I guess the question is, what's the prejudice? If they know that he's been in custody since his arrest and wouldn't have been available to go and seek the gun himself, if that's what happened, what's the prejudice? The idea that someone is shackled involves more than a connection to custodial status. I understand that. You have the whole argument about the dignity and all of that. Right. And I agree with that. But, you know, in Allen, the Supreme Court said just because you were shackled doesn't mean automatic reversal. No, that's absolutely correct. The difference between Allen, people versus Allen, the Illinois Supreme Court case, the difference between Allen and our case is the closely balanced nature of the evidence. Where it is impossible to say in this case that the shackling issue didn't matter. We have, and I was going to discuss them a little later. I'll just discuss it right now. During trial, Corey's cousin, who was present at the time that he allegedly produced a handgun, her name was Precious, testified no, he didn't have a handgun. He pulled out a socket wrench. I never saw him with a handgun that day. Andre, who was with Corey from the time of this confrontation with the Lawson family until Corey was arrested, testified no, I never saw him with a gun. When he confronted the Lawsons, he had a socket wrench. Now, Andre's testimony... What did the police officer testify to, though? Right. There was a police officer who said that he peered through a window and saw what he believed was a handgun. Not only that, he testified in more detail, didn't he? He said that it looked like Corey ejected the magazine, wiped it off, and put it back in the bag. Right. But in order to evaluate whether the evidence in this case was close, we have to look at it almost from a global perspective. What was all of the evidence that the jury would have heard? Just because a police officer testified that he saw Corey with a gun doesn't mean that the jury had to accept that testimony in light of all the other testimony. That's true. But when you look at the police officer compared to the other witnesses who were involved, he's more, I would say, an independent or objective witness than the family members on both sides of this dispute that occurred. I mean, why would he lie about it, I guess, is the question. And I understand, but there was no evidence introduced that he had a motivation to lie in this case. Well, there was no evidence introduced that he had a motivation to lie about the case. You know, he was dispatched following this call that someone had a gun. He did walk onto the property and peer through a window, arguably improperly. He did say that he saw a gun. But again, we have to weigh that evidence with all of the other evidence. And one significant fact here, and I point to Andre's testimony. Again, Andre said, no, Corey never had a gun. He had a socket wrench. During Andre's interrogation, when the police were asking him if Corey had a gun, they brought in a paper sack with a hard metallic object and dropped it on the table and essentially said, now do you want to tell us anything about a gun? Andre didn't change his story. Andre still said, no, there was no gun here. They did the exact same thing with Corey. They brought that bag in and dropped it on the table to make him think they'd found a gun. Corey said, no, it was a socket wrench. Corey's girlfriend, who he had children with, he lived with her, testified, there's not a gun in my house. I've never seen Corey with a gun. And maybe more importantly, if you want to talk about unbiased evidence, what is more clear than the fact that at least five officers went into the residence that Corey shared with his girlfriend after Corey was arrested, searched for a gun. They looked in laundry baskets and behind furniture, around appliances, in the attic and in the basement. They didn't find anything. Does the record reflect whether those officers found a socket wrench when they conducted this search? The record does not reflect that they found a socket wrench. I don't know that they knew to look for a socket wrench until after the search was completed, and there's no evidence that they went back to search the residence again. But not only did they not find a gun in the residence, they didn't find a single gun. They didn't find a bullet. They didn't find a gun case. They didn't find an ammunition clip. They didn't find anything that demonstrated... Was a socket wrench introduced in the evidence? No. As being the socket wrench? There was no socket wrench. It was waged around instead of the gun? No, no socket wrench was introduced. How many hours was it before the police went in to search? It was, I don't even know that an hour passed. I'm not sure exactly. The timeline was Corey came out of the residence. He and Andre were arrested. The police... But there was a delay before he came out of the residence. There was a delay. How long was that delay? Approximately 45 minutes. There was some discussion that there was a large quantity of cannabis in the house. Corey testified that he wanted to attempt to dispose of the cannabis because, again, he lived at that house with his girlfriend and her children, and he didn't want that cannabis found, so he disposed of it, or attempted to. And the police were calling for him to come out of the house on a bullhorn, weren't they? Correct, yes. And he didn't come out for at least 45 minutes, as you say. It's approximately 45 minutes. It may be on one side or the other of that. But, again, we have multiple witnesses who testify that there was no gun involved. Shalone, who Corey lived with, testified he's never had a gun. And despite this exhaustive search, which, by the way, one of the officers, Stephanie Barrett, was a police officer. She was one of the officers who responded to the scene. She was one of the officers who searched the residence. During her trial testimony, while she was discussing the thoroughness of the search, they asked her, were you satisfied with the search? She said, yes, I was satisfied with that search. That strikes me as testimony that an officer who really believed that there was a gun in the home would not have given. As I was reading through the transcripts, I was surprised that she didn't say, no, I wasn't satisfied with it. We didn't find the gun. But that's not what she said. She said, yes, I was absolutely satisfied with the thoroughness of the search. Was there any testimony about what became of the socket wrench? No, there was no testimony about that. There was. So one of the contexts for the socket wrench was Precious testified that Corey had been helping a friend with a car. And when she went back to tell Corey that she had been confronted by this Lawson family in a park, that was the thing that a socket wrench was what he had handy at the time to take with him. The testimony seems to be unrebutted, at least of the defense witnesses, that Corey had this socket wrench and was swinging it around when Mr. Lawson seemed to be approaching Precious. But again, one of the significant facts that might be easy to overlook is at the time of this confrontation with the Lawsons, when Corey allegedly pulled out this gun and pointed it at the Lawsons, there were approximately 15 other witnesses around at that time. People had gathered around the Lawson residence who heard this argument taking place. None of those 15 witnesses reported seeing a gun. None of those 15 witnesses testified at trial that they saw a gun. Again, a significant fact that demonstrates that Corey probably didn't have a gun. If he had had one, I would have expected some of those other witnesses to show up and say that there was a gun there. So it's a serious offense, somebody carrying a gun and threatening people with a gun. But we heard nothing from those 15 witnesses. The closeness of the evidence is what sets this case apart from the other cases that have found a new process error but have not reversed. If this isn't a case, if the closeness of the evidence doesn't compel a reversal in this case, I'm not sure what kind of case would be necessary to compel a reversal in a remand for a new trial. The closeness of the evidence here simply cannot be ignored. Getting back to the error in this case, the case is seen uniform to say that not only was this a new process violation, but there are multiple cases that say that a new process failure in this regard, a violation like this, is inherently prejudicial to a defendant. Of course, though your client and his lawyer never asked the court to have the shackles on his legs removed. Right. And that's part of the ineffective assistance of counsel argument here. Again, that falls within this flawed defense strategy that defense counsel put forward. Defense counsel appears to have believed, again, that the only thing that shackles demonstrate is a continuation of custody. And we know that's not accurate. In fact, regarding the incident where the juror walked into the courtroom and saw the defendant in shackles, Holbrook says, knowing that a defendant is shackled evokes very specific and uniformly negative thoughts in the minds of jurors. Shackling is an unmistakable indication that the defendant needs to be separated from the community at large. That is why shackling issues are so significant. That is why the courts have uniformly said, you cannot do this unless you hold a booze hearing or what now might be termed a Rule 430 hearing. You have to have an individualized determination that there is a reason why that defendant must be shackled. And the court here has admitted that it committed error by not holding that analysis. Defense counsel didn't object in this case. That is one of the factors that demonstrates defense counsel's ineffectiveness. Because not only did he not object, but he misunderstood this fundamental nature of shackling. That shackling isn't a trivial matter. That in a close case, it's the sort of issue that can tip the scales towards a conviction. The Staley court talked about a defendant having a right to stay in trial with the appearance, dignity, and self-respect of a free man. Corey has never had that opportunity. A defendant is supposed to be able to walk into trial and be shrouded with knowing that they are innocent until proven guilty. That they are being tried in front of an impartial fact finder next to an attorney that's going to advocate for their best interest. In each day of trial, Corey had that shroud, that blanket that's supposed to surround him and give him comfort that the justice system is going to work. He had that yanked away from him. And we know that the judge knew that Corey was shackled because every day Corey would come in in wrist shackles and ankle shackles. And the judge would order the wrist shackles removed. But he never ordered the ankle shackles removed. Again, apparently under this mistaken belief that the only thing that shackles demonstrate is custodial status. Or that there's no harm if the jury is unaware that the defendant is shackled. One other thing regarding defense counsel strategy. Prior to the juror walking into the room and seeing Corey in wrist and ankle shackles, defense counsel had already elicited testimony from Corey's girlfriend that he had been in continuous custody. The jury already knew that. There was no need for defense counsel to further prejudice Corey in the eyes of the jury. And prejudice Corey in general by, again, removing this fundamental principle of American jurisprudence that every defendant is supposed to understand, that you are innocent until proven guilty. There was no need for defense counsel to ensure that Corey was shackled because the jury already knew that he had been in continuous custody. The other problem I see with the juror walking into the courtroom, it's the lunch hour. They're transporting Mr. Lee back to jail over the lunch hour. This happens in courtrooms throughout our state. He has to be shackled for transportation. That's their procedures. How do you control over the fact that jurors can walk in? That could happen in any case, whether they're shackled during the trial or not. Two things. One, the judge is the person that's in control of the courtroom. So he has an obligation to see that if the defendant is in the courtroom at any point, prejudice does not befall the defendant. But the other important thing is no one told that to the juror. Nobody told the juror, I'm sorry, ma'am, we do this with every single defendant. Well, the judge offered to talk to the juror. Correct. And defense counsel said that wouldn't be necessary. And, again, that's part of our argument regarding defense counsel's ineffectiveness, is that defense counsel committed error by thinking that the only reason that the juror maybe shouldn't know about Corey being in the shackles was a custodial issue. As I said, jurors have very specific negative thoughts about the defendant that they see in shackles. This juror walked into the courtroom, a secure courtroom, where arguably bailiffs were present, deputies were present, and still sees a defendant in shackles in an armed habitual case. That juror sees that image and thinks that is a dangerous person. Defense counsel was wrong and committed error for not requesting the court to question that juror or to tell the juror, hey, you know what, we were just doing that because Corey was about to be transported. Instead, you have this juror who now probably works in this community with Corey, may have a family in this community, certainly lives in the community, who believes that Corey is an inherently dangerous person. Why couldn't they just think, well, we know he's in custody, so we're going to handcuff him to go back over the long shot? Because there was no evidence that the juror knew that Corey was going anywhere. He could have remained in the courtroom over the lunch hour. Defense counsel said the only reason I would like to question that juror is to see if the juror heard any of what we were discussing in court. Obviously, there are still proceedings of some sort going on. But regardless of when it is, and I should add, I see my time has expired. May I finish with just this one point? Sure. Yes. If this were a juror who during the lunch hour, a bailiff walked by and saw the juror holding a newspaper saying, Corey Lee on trial today, state sure of conviction, that's the sort of thing that when the bailiff reports that to the judge, even though the bailiff saw it on the lunch hour, the judge still needs to inquire into. The fact that this was a lunch hour did not forgive the judge from conducting a further inquiry and making sure that this didn't prejudice Corey. Thank you, Mr. Wilson. We will have rebuttal. Thank you. Mr. McNeil. May it please the court, counsel. First off, with the juror that came in, she was a juror. She was there for the whole trial. Therefore, she saw a defendant for most of the trial with no handcuffs on. So it's clear. If any reasonable person would obviously think that this person is being handcuffed, the person in custody is being handcuffed and shackled to be transported out for the lunch hour, just like everyone else in the courtroom. That's first and foremost with that. It's also, it needs to be said, these are two separate issues. A BOOS hearing is concerned with restraints before the jury during trial. If defense counsel tries to mold these into one issue, the juror, the rogue juror that comes in back unannounced to retrieve her notepad, this is not during trial. This is after the jury is dismissed. This was not before the jury as far as the trial court is concerned. This has nothing to do with the BOOS hearing and would not have been brought up. It could have been any defendant in custody at that point in that position. They would have had the same shackles on whether they were wearing ankle shackles or not, whether they were wearing a stun belt or not. That's first and foremost. We have to keep these two issues separate. And really the only way, so the failure to conduct a BOOS hearing has nothing to do with this juror that comes back in on her own volition to the courtroom after the jury has been dismissed. The BOOS hearing has to do with the ankle shackles during the trial. The only way that the defendant's post-conviction petition can address this rogue juror coming back in would be in the ineffective assistance of counsel argument. I would say that that argument is clearly procedurally defaulted. All of this was on the record. As I said, as your honors know, the trial court made aware to defendant and state and everyone else that this juror saw defendant for a brief moment in his full shackles before being transported out. That was on the record. So was defense counsel's decision not to question this juror further. That was on the record for direct appeal. That was not raised on direct appeal. Defendant provided no reason why it was not raised on direct appeal. That issue is clearly procedurally defaulted. The trial court didn't dismiss this based on procedural default, but of course this court can affirm a post-conviction petition dismissal for any reason supported by the record. In fact, the BOOS hearing issue could have also been raised on direct appeal and is also procedurally defaulted as well. The trial court dismissed this on the merits. That was also proper. We have to remember this is a third stage post-conviction petition. The standard of review is higher than usual. It's not de novo anymore. There was an evidentiary hearing. Therefore, the standard of review is whether the court's decision was manifestly erroneous or whether the opposite conclusion is clearly evident. Here the opposite conclusion is not clearly evident. The trial court came to the correct conclusion. Easiest way to dismiss this is the defendant clearly wasn't prejudiced by the failure to have a BOOS hearing. There was no prejudice at all reflected in the record. The trial court took judicial notice that there was no way the jury could see defendant's ankle shackles. Defense counsel testified to that fact as well. There's clearly nothing in the record that shows any prejudice. There's nothing in the record that shows defendant even commented. In fact, defense counsel stated defendant never even brought up the subject of these ankle shackles. He didn't say, oh, these are annoying or these hurt or even anything like that. There's nothing that suggests that he was hindered in assisting or communicating with his defense counsel. This is much different than Allen or Martinez, which are cited in the defendant's brief. Those defendants were wearing a stun belt, a powerful stun belt. In Martinez, the defendant contemporaneously objected, which of course we didn't have here, that he was scared to wear this during trial. Of course, a defendant's not going to be in the proper state of mind to help his own defense if he's worried about a stun belt powerful enough apparently to make a defendant urinate and defecate on himself. Of course he's going to be scared. These were ankle shackles. These weren't electrified or shocking ankle shackles or anything like that. As far as the jury is concerned, defendant is like every other defendant. There's nothing above the waist that says he has any shackles on at all. Clearly he was not prejudiced. The Supreme Court in Allen, which I cited in my brief, held that if a defendant doesn't object to the failure to conduct a Booth hearing, it results in forfeiture if he was not prejudiced. He didn't object here. He didn't even mention it to his defense counsel here. We know that the jury didn't see these ankle shackles. There simply was no prejudice. More importantly, it wasn't manifestly erroneous for the trial court to decide that there was no prejudice, which is the standard of review that we were working with here. As for Martinez, the defendant brings up in his reply brief that plain error does not apply because this is post-conviction. I would cite People v. Dupree, a Fifth District case. I didn't move to cite additional authority. I just saw this this morning. I have the cite if you want it. It distinguished Martinez like this. Unlike Martinez, there was no contemporaneous objection to the requirement that the defendant wear a stun belt during the trial. There is not a scintilla of evidence that the jury could have been aware of the stun belt. The trial court's failure to conduct a hearing on the necessity of the stun belt as a restraint for the defendant did not contribute to his conviction, and thus the plain error doctrine is inapplicable and the error has been procedurally defaulted. Procedural default obviously applies in post-conviction proceedings. I have the cite for Dupree, and of course I would not object to defense counsel moving to reply to that at any point. So there was no error in deciding that there was no prejudice in this failure to conduct a boost hearing issue. The only other section of the argument is ineffective assistance of counsel. Of course, one of the prongs of ineffective assistance is prejudice as well. We've already determined that there could have been no prejudice as far as the jury was concerned. This was a normal trial. The outcome of the proceedings clearly would not have been different. The defense counsel seems to sort of posit this as a sufficiency of the evidence kind of argument, talking about the closeness of the evidence. That really, I mean, I would submit, and I submitted in my brief that the evidence was overwhelming. The only impartial witness was a police officer, a law enforcement officer, who testified that he did observe a defendant holding a gun. There was nothing in the record to suggest motivation to lie there. Why wasn't the gun found? Why was the gun not found? I'm not sure, and I don't think it really applies to this present case as far as this was not a crucial point of this ineffective assistance of counsel argument or ankle shackles, the fact that the gun was not found. The jury determined that there was sufficient evidence to prove the defendant guilty beyond a reasonable doubt based on three witnesses testifying that the defendant had a gun. Well, the fact that the gun wasn't found, isn't that part of the discussion regarding closeness of the evidence? That was part of the defense theory as well. I mean, you're saying the evidence wasn't close. Isn't that something that would be considered? Sure. I mean, as your honors are aware, there were 45 minutes to hide a gun. You can hide something pretty well in 45 minutes in a whole house. So basically the Champaign police weren't good enough at searching? Again, that would be a direct appeal issue, a sufficiency of the evidence kind of issue. I don't know why they didn't find the gun. However, that doesn't have anything to do with the defendant being found guilty beyond a reasonable doubt. The jury was in the best position to evaluate all the witnesses and their credibility. It weakens the state's case, of course, that they didn't find the gun. However, there were multiple witnesses, one of them an impartial law enforcement officer that testified the defendant indeed had this gun. And from what distance did he observe this? He observed it through a window in the house. Again, this is sort of a red herring sufficiency of the evidence. It's sort of a red herring here. There simply was no prejudice in these ankle shackles. The outcome of the proceeding would not have been different. You had an officer saying he saw a gun. Correct. But the gun was never found. Correct. In the 45 minutes of the standoff, the gun was never found. Clearly, the jury didn't place... Did the police go into the house and search for the gun? Yes. They ever find a gun? They did not. That's established. Again, it has... How long after your client, or not your client, the defendant here was apprehended was the search warrant issued I'm not sure of the timeline there either. I don't know if it was instantly after the defendant was arrested or not that they went back in. Of course, if it was later, again, I don't have the record in front of me. If it was later, then that's even more time to not only hide the gun in the house, but take it out of the house and put it wherever. I can't remember the exact timeline. Again, it doesn't matter as far as the prejudice... Just so it's clear in my mind, in any event, the defendant here couldn't have done anything with the gun after he was taken into custody, which was when he originally left the house after this 45-minute delay. Correct. He was in custody thereafter. Continuous custody. Until trial. Yes, that was elicited. So I don't understand why that was part of the defense theory to bring that in. Well... I mean, why tell the jury he was in constant custody under those facts? I mean, it doesn't make any difference. As far as... Well, the theory was that he himself could not have hidden this gun or gotten rid of this gun, taken it out of the house. Again, it's not finding the gun, poking holes in why they didn't find the gun to establish any sort of reasonable doubt was the defense's theory in establishing the defendant was in continuous custody. It was unsuccessful, but it was not an unreasonable theory to establish the defendant was in current and continuous custody. More importantly, it didn't prejudice the defendant. Again, we have to keep the juror separate from the Booth hearing situation. As far as the juror is concerned, the defense counsel gave his reasoning at the evidentiary hearing why he didn't want to pursue further questioning of this juror. When the search warrant was sought, were the officers aware that there was a dispute as to whether the gun was actually a ratchet, socket? As far as I know, no. Okay. At the time they were seeking the search warrant, the only thing that they were aware of is that there was an allegation there was a gun, right? Yes, by the victims. And they had not heard about... No. And the observation by the officer that saw the defendant with the gun would have already occurred at that point, too. Again, there was no... The juror coming back in, there was no prejudice there because the juror and all the other jurors at that point knew he was in custody. There was no... I mean, it would be ridiculous for that juror to think that, oh, this guy must be unsafe, he's in shackles right now. Well, he wasn't in shackles during the whole rest of the trial. It's clear to any reasonable person that this defendant who was in custody, who, assuming all defendants in custody, was getting ready to be transported out for lunch. That's what a reasonable person would conclude with that juror seeing that at that point. There was no prejudice for the defendant. More importantly, it wasn't unreasonable to pursue further questioning of this witness, maybe, or of this juror. Maybe the trial counsel wanted this juror for sure. Maybe the trial counsel didn't want to highlight this issue further with this juror. She saw the defendant for a brief moment in these shackles. There's multiple reasons why he wouldn't want to pursue further questioning. Therefore, the first prong of Strickland clearly fails there, even if this issue wasn't procedurally defaulted. I've already talked about prejudice. There's no way the defendant was prejudiced. Both prongs of Strickland fail in this case. More importantly, it wasn't manifestly erroneous for the trial court to determine that there was no ineffective assistance of counsel. Again, the standard of review is higher at this third stage of post-conviction proceedings. If there are no more questions, thank the court. It doesn't look like there are any more questions. Thank you. Is there any rebuttal? There is. Okay. I arrived here at the courthouse a little over half an hour before the argument. Mr. McNeil was already here when I arrived, and he didn't say anything to me about a new case that he had found, this People v. Dupree case. So I would ask the court to disregard the argument that Mr. McNeil has made or strike that from his argument. He did not contact me prior to the argument today about this case and did not share it with me before the argument began. The state has also argued that this issue is procedurally defaulted because it could have been raised on direct appeal. The state is incorrect about that. There was no indication in the record on direct appeal that the defendant wore shackles throughout his trial except for the brief period of time that he testified. So the shackling issue, the ankle shackle issue, could not have been raised on direct appeal. Additionally, regarding the juror who walked into the courtroom, I excerpted the court's statement regarding that. It's the only thing that was in the record on direct appeal about the juror coming in. And the court says that a juror came in and may have seen the defendant in custody. There was no indication that the juror did see the defendant in shackles, and there's no mention in the record that when the court said in custody, he meant shackles. There was no way to raise this issue on direct appeal. Had it been raised, the state would have, I believe, correctly argued that the record was insufficient to make the shackling issue and ask that it be reserved for post-conviction proceedings, just as we have done here. The state says that really a sufficiency of the evidence sort of argument is misplaced because this isn't a direct appeal. The state apparently misunderstands the legal standards that we're working with here. If there is a due process violation in a case, it is reversible error unless the state establishes that the error was harmless beyond a reasonable doubt. And that's where the, quote-unquote, the state put a sufficiency of the evidence factor comes into play. We are not arguing that the evidence is insufficient to sustain a conviction. We're arguing that the evidence, I would say, at worst, is closely balanced. At best, again, I think it raises real questions about the sufficiency of the state's evidence against Corey. But this is a closely balanced case, and that is why the evidence here matters. That is why it matters that no handgun was found. Justice Turner, you asked the state a question regarding the search warrant. There was no search warrant in this case. When Corey was arrested, the police had approached his girlfriend and said— Well, I recall now there was— Can we search the house? Correct. She initially said no, and Corey said no. Please, go ahead. Let them search the house. Corey knew that there wouldn't be a gun found in the house because there was no gun in the house. And lo and behold, the police didn't find the gun. So that is extraordinarily significant when it comes to this closely balanced nature of the evidence. The state cannot prove that the shackling issue was harmless beyond a reasonable doubt. There's a case that I cited in the reply brief, the French case, that says that though biologically speaking man may be animal, it was never intended that he be treated as such in the realm of criminal jurisprudence. If we permitted the subjection of man to such treatment before the courts of our land, we have paved the way for him to be tried while tied to a log or in a steel cage, as well as in chains and shackles. Corey has yet to have a trial where he is guaranteed that right of being innocent until proven guilty, as I said during my initial argument. Every single day of his trial, he had that ripped away from him when the court decided that he needed to be shackled during his trial. The law clearly says that that was improper. The court agreed in post-conviction proceedings that it committed error by not holding a booze hearing. And per the legal analysis, the next step is, if there is a due process error, as there is here, because the court did not ensure that shackles were required, the next step in the analysis is to determine whether the error was harmless beyond a reasonable doubt. Again... Wilson, did you say the court ordered him shackled? So every morning when Corey would come into court, the court would order his shackles be removed, but would not apparently refuse to have... Correct. Well, the court is the one, especially under Rule 430 now... I understand booze, I understand Supreme Court Rule 430, I understand all that, but what I'm saying to you is the court would order the handcuffs to be removed, but nobody asked for the ankle shackles to be removed. Isn't that correct? That is correct. I would submit, though, that a request isn't required to do that because the court is in charge of it. That's a little different than saying the court ordered him to be shackled. If I said that, I misspoke, and I apologize for that. That is not what I was meaning to say. So for those reasons, we would ask this court to reverse Corey's conviction and grant him a new trial without shackles unless the court makes a determination that they're required. Thank you, Mr. Wilson. Thank you, Mr. McNeil. The case is submitted. The court stands in recess.